UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 24-40167 |
| MAXIMUS SUPPLY CHAIN ) | |
| HOLDINGS, LLC, *et al.* ) | Chapter 11 |
| ) | |
| Debtors.[1] ) | (Joint Administration Requested) |

**OBJECTION TO DEBTORS' FIRST DAY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS
TO USE CASH COLLATERAL FOR OPERATING EXPENSES
AND GRANTING REPLACEMENT LIENS TO SECURED CREDITORS**

Centier Bank ("Centier"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Debtors' First Day Motion for Entry of Interim and Final Orders Authorizing Debtors to Use Cash Collateral for Operating Expenses and Granting Replacement Liens to Secured Creditors* [Dtk. 5] ("Cash Use Motion").  In support of the Objection, Centier respectfully states as follows:

### BACKGROUND

A.  **SBA Notes**

1.  On October 19, 2022, the debtors Maximus Industries Corporation ("Maximus Industries") and Maximus Supply Chain Holdings, LLC ("Maximus Supply Chain") executed and delivered to Centier a Promissory Note in the original principal amount of Two Million Two Hundred Fifty Thousand Dollars and 00/100 ($2,250,000.00) ("SBA Note 1").  A true, correct and

---

[1] On June 25, 2024, the Debtors filed *Debtors' First Day Motion for Joint Administration* [Dkt. 2].  Said Motion is still pending before this Court.

authentic copy of SBA Note 1 is attached hereto as <u>Exhibit A</u> and by reference made a part hereof. (Miller Decl., ¶ 6).[2]

2.  On October 19, 2022, Maximus Industries, Maximus Supply Chain, Maximus Transport Systems, LLC ("<u>Maximus Transport</u>"), Maximus Logistics Corporation ("<u>Maximus Logistics Corp</u>"), GC3 Warehousing, LLC ("<u>GC3 Warehousing</u>"), GC3 Logistics, Inc. ("<u>GC3 Logistics</u>"), Action SCS LLC ("<u>Action SCS</u>"), Maximus Logistics Solutions, LLC ("<u>Maximus Logistics Solutions</u>") and Sam Bazzi ("<u>Bazzi</u>") executed and delivered to Centier a Collateral Allonge related to SBA Note 1 ("<u>SBA Note 1 Collateral Allonge</u>"). A true, correct and authentic copy of SBA Note 1 Collateral Allonge is attached hereto as <u>Exhibit B</u> and by reference made a part hereof. (Miller Decl., ¶ 7)

3.  In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, debtor Maximus Transport executed and delivered to Centier a Commercial Security Agreement (the "<u>Maximus Transport Security Agreement 1</u>") wherein Maximus Transport granted Centier a lien in certain collateral set forth therein including, but not limited to, all of Maximus Transport's inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by Maximus Transport ("<u>Maximus Transport Collateral</u>"). A true, correct and authentic copy of the Maximus Transport Security Agreement 1 is attached hereto as <u>Exhibit C</u> and by reference made a part hereof. (Miller Decl., ¶ 8)

4.  Centier perfected its security interest in the Maximus Transport Collateral by filing a financing statement on February 1, 2021, as filing no. 202102012736288 in the Office of the Indiana Secretary of State ("<u>Maximus Transport Financing Statement</u>"). A true, correct and

---

[2] "Miller Dec." refers to the *Declaration of Brian D. Miller* attached hereto as <u>Exhibit QQ</u>.

authentic copy of the Maximus Transport Financing Statement is attached hereto as <u>Exhibit D</u> and by reference made a part hereof. (Miller Decl., ¶ 9)

5.      In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, Maximus Logistics Corp executed and delivered to Centier a Commercial Security Agreement (the "<u>Maximus Logistics Corp Security Agreement 1</u>") wherein Maximus Logistics Corp granted Centier a lien in certain collateral set forth therein including, but not limited to, all of Maximus Logistics Corp's inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by Maximus Logistics Corp ("<u>Maximus Logistics Corp Collateral</u>").   A true, correct and authentic copy of the Maximus Logistics Corp Security Agreement 1 is attached hereto as <u>Exhibit E</u> and by reference made a part hereof. (Miller Decl., ¶ 10)

6.      Centier perfected its security interest in the Maximus Logistics Corp Collateral by filing a financing statement on February 1, 2021, as filing no. 202102012736286 in the Office of the Indiana Secretary of State ("<u>Maximus Logistics Corp Financing Statement</u>").  A true, correct and authentic copy of the Maximus Logistics Corp Financing Statement is attached hereto as <u>Exhibit F</u> and by reference made a part hereof. (Miller Decl., ¶ 11).

7.      In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, debtor Maximus Supply Chain executed and delivered to Centier, a Commercial Security Agreement (the "<u>Maximus Supply Chain Security Agreement 1</u>") wherein Maximus Supply Chain granted Centier a lien in certain collateral set forth therein including, but not limited to, all of Maximus Supply Chain's inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents,

3

deposit accounts, investment property and money owned by Maximus Supply Chain ("Maximus Supply Chain Collateral").  A true, correct and authentic copy of the Maximus Supply Chain Security Agreement 1 is attached hereto as Exhibit G and by reference made a part hereof. (Miller Decl., ¶ 12)

8.  Centier perfected its security interest in the Maximus Supply Chain Collateral by filing a financing statement on February 1, 2021, as filing no. 202102012736289 in the Office of the Indiana Secretary of State ("Maximus Supply Chain Financing Statement").  A true, correct and authentic copy of the Maximus Supply Chain Financing Statement is attached hereto as Exhibit H and by reference made a part hereof. (Miller Decl., ¶ 13)

9.  In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, Maximus Industries executed and delivered to Centier, a Commercial Security Agreement (the "Maximus Industries Security Agreement 1") wherein Maximus Industries granted Centier a lien in certain collateral set forth therein including, but not limited to, all of Maximus Industries' inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by Maximus Industries ("Maximus Industries Collateral").  A true, correct and authentic copy of the Maximus Industries Security Agreement 1 is attached hereto as Exhibit I and by reference made a part hereof. (Miller Decl., ¶ 14)

10. Centier perfected its security interest in the Maximus Industries Collateral by filing a financing statement on February 1, 2021, as filing no. 202102012736287 in the Office of the Indiana Secretary of State ("Maximus Industries Financing Statement").  A true, correct and authentic copy of the Maximus Industries' Financing Statement is attached hereto as Exhibit J and by reference made a part hereof. (Miller Decl., ¶ 15)

11. In order to further secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, GC3 Warehousing LLC ("<u>GC3 Warehousing</u>") executed and delivered to Centier, a Commercial Security Agreement (the "<u>GC3 Warehousing Security Agreement 1</u>") wherein GC3 Warehousing granted Centier a lien in certain collateral set forth therein including, but not limited to, all of GC3 Warehousing's inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by GC3 Warehousing ("<u>GC3 Warehousing Collateral</u>").  A true, correct and authentic copy of the GC3 Warehousing Security Agreement 1 is attached hereto as <u>Exhibit K</u> and by reference made a part hereof. (Miller Decl., ¶ 16).

12. Centier perfected its security interest in the GC3 Warehousing Collateral by filing a financing statement on January 14, 2020, as filing no. 20200114061011 in the Office of the Indiana Secretary of State ("<u>GC3 Warehousing Financing Statement</u>").  A true, correct and authentic copy of the GC3 Warehousing Financing Statement is attached hereto as <u>Exhibit L</u> and by reference made a part hereof. (Miller Decl., ¶ 17)

13. In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, GC3 Logistics, Inc. ("<u>GC3 Logistics</u>") executed and delivered to Centier, a Commercial Security Agreement (the "<u>GC3 Logistics Security Agreement 1</u>") wherein GC3 Logistics granted Centier a lien in certain collateral set forth therein including, but not limited to, all of GC3 Logistics' inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by GC3 Logistics ("<u>GC3 Logistics Collateral</u>"). A true, correct and

authentic copy of the GC3 Logistics Security Agreement 1 is attached hereto as <u>Exhibit M</u> and by reference made a part hereof. (Miller Decl., ¶ 18).

14. Centier perfected its security interest in the GC3 Logistics Collateral by filing a financing statement on January 14, 2020, as filing no. 20200114061072 in the Office of the Indiana Secretary of State ("<u>GC3 Logistics Financing Statement</u>"). A true, correct and authentic copy of the GC3 Logistics' Financing Statement is attached hereto as <u>Exhibit N</u> and by reference made a part hereof. (Miller Decl., ¶ 19)

15. In order to further secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, Action SCS, LLC ("<u>Action SCS</u>") executed and delivered to Centier, a Commercial Security Agreement (the "<u>Action SCS Security Agreement 1</u>") wherein Action SCS granted Centier a lien in certain collateral set forth therein including, but not limited to, all of Action SCS's inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by Action SCS ("<u>Action SCS Collateral</u>"). A true, correct and authentic copy of the Action SCS Security Agreement 1 is attached hereto as <u>Exhibit O</u> and by reference made a part hereof. (Miller Decl., ¶ 20).

16. Centier perfected its security interest in the Action SCS Collateral by filing a financing statement on January 14, 2020, as filing no. 20200114061085 in the Office of the Indiana Secretary of State ("<u>Action SCS Financing Statement</u>"). A true, correct and authentic copy of the Action SCS Financing Statement is attached hereto as <u>Exhibit P</u> and by reference made a part hereof. (Miller Decl., ¶ 21).

17. In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 1, on October 19, 2022, Maximus Logistics Solutions, LLC

("Maximus Logistics Solutions") executed and delivered to Centier, a Commercial Security Agreement (the "Maximus Logistics Solutions Security Agreement 1") wherein Maximus Logistics Solutions granted Centier a lien in certain collateral set forth therein including, but not limited to, all of Maximus Logistics Solutions' inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, letters of credit, documents, deposit accounts, investment property and money owned by Maximus Logistics Solutions ("Maximus Logistics Solutions Collateral") (the Maximum Transport Collateral, Maximus Logistics Corp Collateral, Maximus Supply Chain Collateral, Maximus Industries Collateral, GC3 Warehousing Collateral, GC3 Logistics Collateral, Action SCS Collateral, Maximus Logistics Solutions Collateral collectively is the "Collateral"). A true, correct and authentic copy of the Maximus Logistics Solutions Security Agreement 1 is attached hereto as Exhibit Q and by reference made a part hereof. (Miller Decl., ¶ 22).

18.   Centier perfected its security interest in the Maximus Logistics Solutions Collateral by filing a financing statement on February 1, 2021, as filing no. 202102012736285 in the Office of the Indiana Secretary of State ("Maximus Logistics Solutions Financing Statement"). A true, correct and authentic copy of the Maximus Logistics Solutions Financing Statement is attached hereto as Exhibit R and by reference made a part hereof. (Miller Decl., ¶ 23).

19.   On October 19, 2022, to secure the indebtedness of Maximus Industries and Maximus Supply Chain to Centier, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximus Logistics Solutions and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 1"). True, correct and authentic copies of Guaranties 1 are attached hereto as Exhibit S and by reference made a part hereof. (Miller Decl., ¶ 24).

7

20. On December 7, 2022, Maximus Industries and Maximus Supply Chain to Centier a Promissory Note and a Business Loan Agreement in the original principal amount of Three Hundred Seventy-Four Thousand Five Hundred Eighty Dollars and 00/100 ($374,580.00) (collectively, "SBA Note 2"). A true, correct and authentic copy of SBA Note 2 is attached hereto as Exhibit T and by reference made a part hereof. (Miller Decl., ¶ 25).

21. On December 7, 2022, Maximus Industries, Maximus Supply Chain, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximus Logistics Solutions and Bazzi executed and delivered to Centier a Collateral Allonge related to SBA Note 2 ("SBA Note 2 Collateral Allonge"). A true, correct and authentic copy of SBA Note 2 Collateral Allonge is attached hereto as Exhibit U and by reference made a part hereof. (Miller Decl., ¶ 26).

22. On December 7, 2022, to secure the indebtedness of Maximus Industries and Maximus Supply Chain to Centier, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximum Logistics Solutions and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 2"). True, correct and authentic copies of Guaranties 2 are attached hereto as Exhibit V and by reference made a part hereof. (Miller Decl., ¶ 27).

23. In order to secure the obligations of Maximus Industries and Maximus Supply Chain to Centier under SBA Note 2, on December 7, 2022, Maximus Industries executed and delivered to Centier an Assignment of Life Insurance Policy as Collateral ("Life Insurance Assignment") wherein Maximus Industries assigned Term Life Insurance Policy Number L7 104 874 issued by the Prudential Life Insurance Company of American on the life of Bazzi in the amount of $3,000,000 ("Life Insurance Policy"). A true, correct and authentic copy of the Life

Insurance Assignment is attached hereto as Exhibit W and by reference made a part hereof. (Miller Decl., ¶ 28).

24. On December 18, 2023, the Maximus Industries and Maximus Supply Chain to Centier a Promissory Note and a Business Loan Agreement in the original principal amount of Three Million Sixty-Two Thousand Fifty Dollars and 00/100 ($3,062,050.00) ("SBA Note 3"). A true, correct and authentic copy of SBA Note 3 is attached hereto as Exhibit X and by reference made a part hereof. (Miller Decl., ¶ 29).

25. On December 18, 2023, Maximus Industries, Maximus Supply Chain, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximus Logistics Solutions and Bazzi executed and delivered to Centier a Collateral Allonge related to SBA Note 3 ("SBA Note 3 Collateral Allonge"). A true, correct and authentic copy of SBA Note 3 Collateral Allonge is attached hereto as Exhibit Y and by reference made a part hereof. (Miller Decl., ¶ 30).

26. On December 18, 2023, to secure the indebtedness of Maximus Industries and Maximus Supply Chain to Centier, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximum Logistics Solutions and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 3"). True, correct and authentic copies of Guaranties 3 are attached hereto as Exhibit Z and by reference made a part hereof. (Miller Decl., ¶ 31).

**B.    RLOC Notes**

27. On February 22, 2023, Maximus Logistics Solutions executed and delivered to Centier a Promissory Note in the original principal amount of Five Million Dollars and 00/100

($5,000,000.00) ("RLOC Note 1"). A true, correct and authentic copy of RLOC Note 1 is attached hereto as Exhibit AA and by reference made a part hereof. (Miller Decl., ¶ 32).

28. On February 22, 2023, the Obligors executed and delivered to Centier a Collateral Allonge related to RLOC Note 1 ("RLOC Note 1 Collateral Allonge"). A true, correct and authentic copy of RLOC Note 1 Collateral Allonge is attached hereto as Exhibit BB and by reference made a part hereof. (Miller Decl., ¶ 33).

29. On February 22, 2023, to secure the indebtedness of the Maximus Logistics Solutions to Center, Maximus Industries, Maximus Supply Chain, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 4"). True, correct and authentic copies of Guaranties 4 are attached hereto as Exhibit CC and by reference made a part hereof. (Miller Decl., ¶ 34).

30. On May 12, 2023, Maximus Industries and Maximus Supply Chain to Centier executed and delivered to Centier a Promissory Note in the original principal amount of Two Million Five Hundred Thousand Dollars and 00/100 ($2,500,000.00) ("RLOC Note 2"). A true, correct and authentic copy of RLOC Note 2 is attached hereto as Exhibit DD and by reference made a part hereof. (Miller Decl., ¶ 35).

31. On May 12, 2023, the Obligors executed and delivered to Centier a Collateral Allonge related to RLOC Note 2 ("RLOC Note 2 Collateral Allonge"). A true, correct and authentic copy of RLOC Note 2 Collateral Allonge is attached hereto as Exhibit EE and by reference made a part hereof. (Miller Decl., ¶ 36).

32. On May 12, 2023, to secure the indebtedness of Maximus Industries and Maximus Supply Chain to Centier, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3

Logistics, Action SCS, Maximum Logistics Solutions and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 5"). True, correct and authentic copies of Guaranties 5 are attached hereto as Exhibit FF and by reference made a part hereof. (Miller Decl., ¶ 37).

33. In order to secure its obligations and the obligations of Maximus Supply Chain to Centier, on January 20, 2021, Maximus Transport executed and delivered to Centier a Commercial Security Agreement (the "Maximus Transport Security Agreement 2") wherein Maximus Transport granted Centier a lien in the Maximus Transport Collateral. A true, correct and authentic copy of the Maximus Transport Security Agreement 2 is attached hereto as Exhibit GG and by reference made a part hereof. (Miller Decl., ¶ 38).

34. Centier perfected its security interest in the Maximus Transport Collateral by filing the Maximus Transport Financing Statement. (Miller Decl., ¶ 39).

35. In order to secure its obligations and the obligations of Maximus Supply Chain to Centier, on January 20, 2021, Maximus Logistics Corp executed and delivered to Centier a Commercial Security Agreement (the "Maximus Logistics Corp Security Agreement 2") wherein Maximus Logistics Corp granted Centier a lien in the Maximus Logistics Corp Collateral. A true, correct and authentic copy of the Maximus Logistics Corp Security Agreement 2 is attached hereto as Exhibit HH and by reference made a part hereof. (Miller Decl., ¶ 40).

36. Centier perfected its security interest in the Maximus Logistics Corp Collateral by filing the Maximus Logistics Corp Financing Statement. (Miller Decl., ¶ 41).

37. In order to secure its obligations and the obligations of Maximus Supply Chain to Centier, on January 20, 2021, Maximus Supply Chain executed and delivered to Centier, a Commercial Security Agreement (the "Maximus Supply Chain Security Agreement 2") wherein

Maximus Supply Chain granted Centier a lien in the Maximus Supply Chain Collateral. A true, correct and authentic copy of the Maximus Supply Chain Security Agreement 2 is attached hereto as Exhibit II and by reference made a part hereof. (Miller Decl., ⁋ 42).

38. Centier perfected its security interest in the Maximus Supply Chain Collateral by filing the Maximus Supply Chain Financing Statement. (Miller Decl., ⁋ 43).

39. In order to secure its obligations and the obligations of Maximus Supply Chain to Centier, on January 20, 2021, Maximus Industries executed and delivered to Centier, a Commercial Security Agreement (the "Maximus Industries Security Agreement 2") wherein Maximus Industries granted Centier a lien in the Maximus Industries Collateral. A true, correct and authentic copy of the Maximus Industries Security Agreement is attached hereto as Exhibit JJ and by reference made a part hereof. (Miller Decl., ⁋ 44).

40. Centier perfected its security interest in the Maximus Industries Collateral by filing the Maximus Industries Financing Statement. (Miller Decl., ⁋ 45).

41. In order to further secure its obligations and the obligations of Maximus Supply Chain to Centier, on January 20, 2021, GC3 Warehousing executed and delivered to Centier, a Commercial Security Agreement (the "GC3 Warehousing Security Agreement 2") wherein GC3 Warehousing granted Centier a lien in the GC3 Warehousing Collateral. A true, correct and authentic copy of the GC3 Warehousing Security Agreement 2 is attached hereto as Exhibit KK and by reference made a part hereof. (Miller Decl., ⁋ 46).

42. Centier perfected its security interest in the GC3 Warehousing Collateral by filing the GC3 Warehousing Financing Statement. (Miller Decl., ⁋ 47).

43. In order to secure its obligations and the obligations of Maximus Supply Chain to Centier, on October 19, 2022, GC3 Logistics executed and delivered to Centier, a Commercial

Security Agreement (the "GC3 Logistics Security Agreement 2") wherein GC3 Logistics granted Centier a lien in the GC3 Logistics Collateral. A true, correct and authentic copy of the GC3 Logistics Security Agreement 2 is attached hereto as Exhibit LL and by reference made a part hereof. (Miller Decl., ¶ 48).

44. Centier perfected its security interest in the GC3 Logistics Collateral by filing the GC3 Logistics Financing Statement. (Miller Decl., ¶ 49).

45. In order to further secure its obligations and the obligations of Maximus Supply Chain to Centier, on January 20, 2021, Action SCS executed and delivered to Centier, a Commercial Security Agreement (the "Action SCS Security Agreement 2") wherein Action SCS granted Centier a lien in Action SCS Collateral. A true, correct and authentic copy of the Action SCS Security Agreement 2 is attached hereto as Exhibit MM and by reference made a part hereof. (Miller Decl., ¶ 50).

46. Centier perfected its security interest in the Action SCS Collateral by filing the Action SCS Financing Statement. (Miller Decl., ¶ 51).

47. In order to secure its obligations and the obligations of Maximus Supply to Centier, on January 20, 2021, Maximus Logistics Solutions executed and delivered to Centier, a Commercial Security Agreement (the "Maximus Logistics Solutions Security Agreement 2") wherein Maximus Logistics Solutions granted Centier a lien in the Maximus Logistics Solutions Collateral. A true, correct and authentic copy of the Maximus Logistics Solutions Security Agreement 2 is attached hereto as Exhibit NN and by reference made a part hereof. (Miller Decl., ¶ 52).

48. Centier perfected its security interest in the Maximus Logistics Solutions Collateral by filing the Maximus Logistics Solutions Financing Statement. (Miller Decl., ¶ 53).

49. On February 22, 2023, to secure the indebtedness of Maximus Logistics Solutions to Centier, Maximus Industries, Maximus Supply Chain, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 6"). True, correct and authentic copies of Guaranties 6 are attached hereto as Exhibit OO and by reference made a part hereof. (Miller Decl., ¶ 54).

50. On May 12, 2023, to secure the indebtedness of Maximus Industries and Maximus Supply Chain to Centier, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximum Logistics Solutions and Bazzi each executed and delivered to Centier a Commercial Guaranty (collectively, "Guaranties 7"). True, correct and authentic copies of Guaranties 2 are attached hereto as Exhibit PP and by reference made a part hereof. (Miller Decl., ¶ 55).

51. All documents set forth within ¶¶ 1-50 are collectively referred to as the Loan Documents.

52. RLOC Note 1 and RLOC Note 2 have matured and remain outstanding. (Miller Decl., ¶¶ 59-60).

53. On June 25, 2025 (the "Petition Date"), Maximus Industries, Maximus Supply Chain, Maximus Transport, Maximus Logistics Corp, GC3 Warehousing, GC3 Logistics, Action SCS, Maximus Logistics Solutions (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and are presently operating as a Debtors-in-Possession in accordance with §§ 1107 and 1108 of the Bankruptcy Code.

## OBJECTION

### A.    Legal Standard

54. Section 363 of the Bankruptcy Code provides that a trustee or debtor in possession may not utilize cash collateral unless the creditor holding an interest in such cash collateral consents or, after notice and a hearing, the court finds that the secured creditor's interest in the cash collateral is adequately protected. 11 U.S.C. § 363(c) and (e); *see also In re Roberts*, 249 B.R. 152 (Bankr. W.D. Mich. 2000).

55. Centier has an interest in the cash collateral and has not consented to the Debtors' use of cash collateral.

56. "If the creditor does not consent, cash collateral may be used by the debtor only to the extent that the court determines that the creditor's interest in the collateral is adequately protected." *GVM, Inc. v. PeoplesBank (In re GMV, Inc.)*, 605 B.R. 315, 324 (Bankr. M.D. Pa. 2019) (citing 11 U.S.C. §363(e)).

57. The burden on the Debtors to establish that Centier's interest in the cash collateral is adequately protected. *See* 11 U.S.C. § 363(p)(1).

58. Adequate protection demands that the value of the creditor's pre-petition collateral be preserved. *See In re Grant Sports, Inc.*, 86 B.R. 971, 972 (Bankr. N.D. Ind. 1988) (court examining the adequate protection principle in the context of 11 U.S.C. § 362(d)(1); however, the principal is applicable here).

### B.    Argument

59. The Debtors' Cash Use Motion fails to provide specifical information necessary to determine the exact value of Centier's pre-petition collateral.

60. Mr. Bazzi's declaration states that Debtors' "believe the value of all personal property and assets owned by the Debtors . . . is $36,000,000." (Bazzi Decl., ¶ 66).

61. The Debtors have failed to itemize how they computed the alleged $36,000,000 in personal property and assets.

62. Generalized raw numbers fail to satisfy a debtor's proof requirement. *See In re Grant Sport, Inc.*, 86 B.R. at 973 (where the court noted an inquiry into valuation must not end with a facial acceptance of raw numbers as those numbers can for many reasons be illusory).

63. Mr. Bazzi further states that the Debtors had cash on hand or on deposit in the approximately amount of $95,052.45, cash held by Centier in the amount of $150,415.01 and accounts receivables totaling $2,249,617.03. (Bazzi Decl., ¶ 70).

64. Mr. Bazzi's declaration fails to itemize or provide any breakdown of allegedly $2.2 million in accounts receivables. Mr. Bazzi does not provide the age or size of each receivable or the historical collection rate for those accounts. The Debtors have failed to provide any specific information to assess the quality of value of the Debtors' pre-petition accounts receivable.

65. Without this information, neither Centier nor the Court can assess the "true" value of the aggregate numbers of the Debtors' pre-petition accounts receivables and therefore Centier cannot evaluate whether its secured position will be at risk by Debtors' use of cash collateral or if the adequate protection preserves Centier's pre-petition collateral's value.

66. There are also fundamental issues with the budget proposed by the Debtors.

67. According to the Debtors' proposed budget, the Debtors anticipate incurring $350,000 in legal fees for the first 13 weeks of the case. (Cash Use Motion, Exhibit A). The Debtors have only offered replacement liens as a means of adequate protection in this case and the

budget contains no indication that the Debtors will make any debt service payments to Centier or other secured creditors during such time.

68. Centier has serious concerns about how the Debtors have used their cash to date and continuing more of the same without additional adequate protection, including cash payments, makes replacements liens alone of little value.

69. The Debtors' proposal that they continue to operate on cash collateral that they claim is diminishing due to a decline in customer demand makes continued operations on cash collateral more precarious, particularly without a specific strategy for these cases. (Bazzi Decl., ¶ 31). They simply request to continue as before, but with the protections of the automatic stay.

70. Lastly, the Debtors' show increased cash, but do not explain there the money is coming from.

71. In addition to providing Centier with meaningful adequate protection against the diminution in value of its collateral, Centier would also request additional relief, including, but not limited to, the following:

   a. Budget variances should be measured on a weekly basis, established with weekly receipt and expenditure reconciliation reports, and should be limited to 5% variances on both a line item and aggregate basis.

   b. The proposed order should have clear milestones and customer events of default that would trigger Centier's right to terminate the use of cash collateral and exercise remedies against the Debtors and its collateral.

   c. Any approval of use of cash collateral should be capped and limited to 30-days while the Debtors' establish a path to a meaningful reorganization or strategy for monetizing their assets.

## RESERVATION OF RIGHTS AND REQUEST FOR RELIEF

72. Due to the Debtors' prior actions that have prevented Centier from reviewing certain financial information to which it is entitled and which is essential to this objection, Centier files this preliminary objection and reserves its rights to present further arguments at the final hearing and supplement these objection.

73. Centier, requests that the Court deny the Debtors' Cash Use Motion as set forth herein and grant Centier any other such relief to which it may be entitled.

Dated: June 27, 2024                                Respectfully submitted,


                                                    /s/ Kay Dee Baird
                                                    Kay Dee Baird, Attorney No. 28821-73
                                                    Krieg DeVault LLP
                                                    One Indiana Square, Suite 2800
                                                    Indianapolis, Indiana  46204
                                                    Telephone:    (317) 636-4341 (Main)
                                                                  (317) 238-6306 (Direct)
                                                    Facsimile:    (317) 636-1507
                                                    Email:        kbaird@kdlegal.com

                                                    *Attorney for Centier Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

W. Kent Carter, Kentcarter@grsm.com, jswick@grsm.com
Nancy J. Gargula, USTPRegion10.SO.ECF@usdoj.gov
Whitney L. Mosby, whitney.mosby@dentons.com, suzanne.japenga@dentons.com
Thomas C. Scherer, thomas.scherer@dentons.com, faith.wolfe@dentons.com
Spencer W. Tanner, spencer.tanner@gutweinlaw.com, brooke.perez@gutweinlaw.com
Brian Tuinenga, brian.tuinenga@usdoj.gov
Jason R. Burke, jburke@bbrlawpc.com
Sarah L. Fowler, sfowler@bbrlawpc.com

I further certify that on June 27, 2024, a copy of the foregoing was mailed first-class U.S. Mail, postage prepaid, and properly addressed to the following:

None.

/s/ Kay Dee Baird
Kay Dee Baird