# Exhibit A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,250,000.00 | 10-19-2022 | 10-19-2032 | [redacted]8695 | | [redacted]9419 | KSB | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MAXIMUS INDUSTRIES CORPORATION
MAXIMUS SUPPLY CHAIN HOLDINGS, LLC
3535 BRADY LN
LAFAYETTE, IN 47909-5107

**Lender:** CENTIER BANK
Business Banking Lafayette
600 East 84th Avenue
Merrillville, IN 46410

**Principal Amount: $2,250,000.00** **Date of Note: October 19, 2022**

**PROMISE TO PAY. MAXIMUS INDUSTRIES CORPORATION; and MAXIMUS SUPPLY CHAIN HOLDINGS, LLC ("Borrower") jointly and severally promise to pay to CENTIER BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Two Hundred Fifty Thousand & 00/100 Dollars ($2,250,000.00), together with interest on the unpaid principal balance from October 19, 2022, until paid in full.**

**PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 60 monthly consecutive principal and interest payments in the initial amount of $26,980.63 each, beginning November 19, 2022, with interest calculated on the unpaid principal balances using an initial discounted interest rate of 7.620% per annum based on a year of 360 days; 59 monthly consecutive principal and interest payments, beginning November 19, 2027, with interest calculated on the unpaid principal balances using an interest rate based on the Index described below, plus a margin of 3.500 percentage points, the sum rounded up to the nearest 0.125; and one principal and interest payment on October 19, 2032, with interest calculated on the unpaid principal balances using an interest rate based on the Index described below, plus a margin of 3.500 percentage points, the sum rounded up to the nearest 0.125. The final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied to interest that is due, then to principal that is due, and finally to any charges owed other than principal and interest. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**MINIMUM BILLING AMOUNT FOR INTEREST ONLY LOANS.** If interest amount due is less than $10.00 for any given billing cycle, the payment due date will roll by one payment frequency; and a billing notice will not be produced until the next billing cycle or until the interest due is $10.00 or greater, whichever occurs first.

**INDEX.** The index used for the initial rate is 4.172% per annum.

**VARIABLE INTEREST RATE.** For the first 60 payments, the interest rate on this loan will be 7.620%. Thereafter, the interest rate on this Note is subject to change from time to time based on changes in an independent index which is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of five years (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If Lender determines, in its sole discretion, that the Index for this Note has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this Note, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust any margin corresponding to the Index being substituted to accompany the substitute index. Margins corresponding to the Index are described in the "Payments" section. The change to the margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each 5 years. Borrower understands that Lender may make loans based on other rates as well. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever changes occur in the interest rate, Lender, at its option, may do one or more of the following: (A) change Borrower's payments by setting a new payment amount calculated by amortizing the outstanding principal balance at the new interest rate over the remaining term of the loan, (B) increase Borrower's payments to cover accruing interest if the interest rate adjustment is an increase, (C) change the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and change Borrower's final payment amount.

**INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rates stated in this Note.**

**ADDITIVE LATE RATE.** When any payment, including but not limited to any scheduled payments and any payments due on maturity, is not paid within 10 days after the due date thereof, or upon the occurrence of any other Event of Default, the interest rate on this Note shall increase as indicated in the "Interest After Default" Section.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: CENTIER BANK, Business Banking Lafayette, 600 East 84th Avenue, Merrillville, IN 46410.**

**REFINANCE PREMIUM.** Upon Refinance of this Note, Lender is entitled to the following refinance premium: Partial or full repayment will be permitted. However, in the event this loan is refinanced with another financial institution during the first five years of this loan's initial maturity schedule a two percent (2%) refinance premium will be charged on the outstanding principal balance.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or

**PROMISSORY NOTE**
**(Continued)**

Loan No: 8695 — Page 2

a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount. Under all circumstances, the Indebtedness will be repaid without relief from any Indiana or other valuation and appraisement laws.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Indiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Indiana.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Lake County, State of Indiana.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by All Collateral as described in Collateral Allonge dated October 19, 2022.

**WAIVER OF DEFENSES.** A Guarantor or Borrower of this Note waives (a) all defenses based on suretyship or impairment of collateral, and (b) any defenses which the Borrower may assert on the underlying debt, including but not limited to failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of legal capacity, statute of limitations, lender liability, accord and satisfaction, and usury.

**DEPOSIT ACCOUNTS.** For as long as Borrower owe any amount under the Loan, or Borrower has an outstanding commitment to the Lender, Borrower agrees to maintain a primary operating account with the Lender.

**FINANCIAL STATEMENTS/COVENANTS.** Borrower will prepare and maintain its financial records using consistently applied generally accepted accounting principles then in effect. Borrower will provide Lender with financial information in a form Lender accepts, and under the following terms:

**Certification:** Borrower represents and warrants that any financial statements that Borrower provides Lender fairly represents its financial conditions for the stated periods, is current, complete, true, and accurate in all material respects, includes all of its direct or contingent liabilities, and there has been no material adverse change in its financial condition, operations, or business since the date the financial information was prepared.

**Annual Business Tax Return:** On an annual basis, the Borrower agrees to provide a copy of the Business Tax Return, including all attachments and supplemental statements, as soon as available or at least 120 days after the close of each fiscal year.

**Annual Company Reviewed Financial Statements:** The Borrower shall maintain a standard and modern system for accounting and shall furnish to the Lender, within 120 days after the end of each fiscal year, a copy of the Borrower's consolidating financial statements reviewed by a firm of independent certified public accountants acceptable to the Lender (which acceptance shall not be unreasonably withheld) and accompanied by a review verification of such accountants without qualification.

**Quarterly Company Prepared Financial Statements:** Borrower shall maintain a standard and modern system for accounting and shall furnish to Lender, within 45 days after the end of each quarter, a copy of the Borrower's internally prepared consolidated financials statements for that quarter and for the year-to-date in a form reasonably acceptable to the Lender, prepared and certified as complete and correct, subject to changes resulting from year-to-year adjustments, by the principal financial officer of the Borrower.

**Quarterly Accounts Receivable Aging:** Within 30 days after the end of each quarter, the Borrower shall provide to the Lender an Accounts Receivable aging report in form and substance reasonably acceptable to the Lender.

**Quarterly Accounts Payable Aging:** Within 30 days after the end of each quarter, the Borrower shall provide to the Lender an Accounts Payable aging report in form and substance reasonably acceptable to the Lender.

**Monthly Accounts Receivable Aging:** Within 30 days after the end of each month, the Borrower shall provide to the Lender an Accounts Receivable aging report in form and substance reasonably acceptable to the Lender.

**No Additional Debt:** The Borrower is prohibited from incurring additional indebtedness without the Lender's prior approval.

**Requested Information:** Borrower will provide Lender with any other information about its operations, financial affairs and conditions within 30 days after Lender's request.

**Consolidated Pre Distribution Debt Service Coverage:** Maintain a Pre Distribution Debt Service Coverage based on the Consolidated statement that does not fall below 1.20 for the period starting December 31, 2020. Debt Service Coverage Ratio (Pre Distribution) is defined as: Net Operating Income prior to Distributions divided by Total Debt Service. Net Operating Income is defined as: Net Income before Non-Recurring Income and Non-Recurring Losses increased by the sum of Amortization, Depreciation, and Interest. Total Debt Service is defined as: all principal and interest payments due in the current period including capital lease payments.

**Consolidated Post Distribution Debt Service Coverage:** Maintain a Post Distribution Debt Service Coverage based on the Consolidated statement that does not fall below 1.20 for the period starting December 31, 2020. Debt Service Coverage Ratio (Post Distribution) is defined as: Net Operating Income less Distributions divided by Total Debt Service. Net Operating Income is defined as: Net Income before Non-Recurring Income and Non-Recurring Losses increased by the sum of Amortization, Depreciation, and Interest. Total Debt Service is defined as: all principal and interest payments due in the current period including capital lease payments.

**Senior Debt/EBITDA:** Maintain a Senior Debt/EBITDA that does not exceed 5.00 for the period starting December 31, 2022. The Total Debt/EBITDA will be evaluated for each annual statement. Senior Debt is defined as: all borrowed debt, including senior borrowed debt, less subordinated debt divided by EBITDA. EBITDA is defined as: Net Income increased by the sum of Interest, Income Taxes, Depreciation, and Amortization.

**No Distributions Excess of Sub S Tax Liability:** Maximus Supply Chain Holdings, LLC ("Supply Chain") shall not make any Distributions in excess of Tax Distributions. Tax Distributions mean cash Distributions made by Supply Chain to its members so that the members (or if the member is a pass-through entity, the ultimate taxpayer) may pay their respective state and federal taxes attributable to the income of Supply Chain, in each case based on the assumption that the distributions will be made assuming that all members are taxed at the highest marginal federal income tax rate and the highest marginal state tax rate applicable to any member (or if the member is a pass-through entity, the ultimate taxpayer).

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**ERRORS AND OMISSIONS.** Borrower agrees, if requested by Lender, to fully cooperate in the correction, if necessary in the reasonable discretion of the Lender, of any and all loan closing documents so that all documents accurately describe the loan contract between Borrower and Lender. Borrower agrees to assume all costs including by way of illustration and not limited to actual expenses, legal fees, and marketing

---

losses for failing to reasonably comply with Lender's requests within thirty (30) days.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

**MAXIMUS INDUSTRIES CORPORATION**

By: _____
    SAM BAZZI, CEO/President of MAXIMUS
    INDUSTRIES CORPORATION


**MAXIMUS SUPPLY CHAIN HOLDINGS, LLC**

By: _____
    SAM BAZZI, Manager of MAXIMUS SUPPLY CHAIN
    HOLDINGS, LLC

LaserPro, Ver. 22.2.10.018 Copr. Finastra USA Corporation 1997, 2022. All Rights Reserved. - IN C:\LPICF\ILPL\D20 FC TR-30637 PR-169