UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| In re: <br><br> MAXIMUS SUPPLY CHAIN HOLDINGS, LLC, *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 24-40167 <br> REG/tb <br><br> (Jointly Administered) |

**MOTION TO (I) COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT; (II) TO COMPEL ADEQUATE ASSURANCE; (III) GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (IV) TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE CLAIMS UNDER 11 U.S.C § 503**

Tempus Maximus, LLC ("**Tempus**"), by and through its undersigned counsel, respectfully move this Court (the "**Motion**") for entry of an order: (1) compelling the Debtors (specifically Maximus Logistics Solutions, LLC ("MLS")) to immediately determine whether to assume or reject a certain Lease Agreement and related documents (collectively, the "**Lease Agreement**") regarding the Debtor's rights title and interests as a tenant of land and improvements in real estate commonly known as 3535 Brady Lane, Lafayette, Indiana 47909 (the "Property"), pursuant to 11 U.S.C. § 365(d)(2) by the Assumption/Rejection Deadline (defined below); (2) to the extent the Debtors seek to assume the Lease Agreement, compelling the Debtors to provide adequate assurance as required by Section 365(b)(1) and in the form acceptable to Tempus; (3) should the Lease Agreement be rejected, granting Tempus relief from the automatic stay to (a) enter the Property and secure the property subject to the Lease Agreement, and (b) cease performance of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Maximus Supply Chain Holdings, LLC (6729); Maximus Transport Systems, LLC (9839); Maximus Logistics Corporation (0372); Maximus Industries Corporation (0902); Maximus Logistics Solutions, LLC (0372); Action SCS, LLC (1633); GC3 Logistics, Inc. (8844); and GC3 Warehousing, LLC (4132).

1

all obligations of Tempus and related parties to the Debtors under the Lease Agreement, including but not limited to ceasing further access to the Property and prohibiting any activity related thereto; (c) ESCROW ACCOUNT and (4) allowing Tempus Administrative Claims and compelling payment of the same in full by the Debtors. In support of the Motion, Tempus states as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper before this Court pursuant to 28 U.S.C §§ 1408 and 1490.

3. This is a core proceeding within the meaning of 28 U.S.C § 157(b).

4. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Tempus consents to the entry of final orders of judgment by the bankruptcy court.

5. The statutory and legal predicates for the relief requested herein are sections 105, 362, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), and Rule 4001 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relevant Background

**A.    The Purchase Agreement and Lease Agreement**

6. Effective February 27, 2024, Tempus and And-Lex Properties, LLC, an entity related to the Debtors ("And-Lex") entered into a Real Estate Purchase and Sale Agreement (the "Purchase Agreement") for Tempus to purchase from And-Lex the Property for a purchase price of Twenty Million Dollars ($20,000,000). A copy of the Purchase Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

7.  The closing on the purchase of the Property by Tempus occurred on March 15, 2024.

8.  Pursuant to the requirements of the Purchase Agreement, on March 15, 2024, simultaneously with the closing, MLS, as "Tenant", entered into a certain Lease Agreement (the "**Lease Agreement**") with Tempus, by which MLS leased the Propertyfrom Tempus. A true and accurate copy of said Lease Agreement is attached hereto as Exhibit "B" and incorporated herein by reference.

9.  The Lease Agreement provides that MLS is to pay a base annual rent of $2,006,042.30 during the first year of the Lease Agreement in monthly installments. The base annual rent increases by 2.75% each year during the term of the Lease Agreement.

10. The Lease Agreement also provides that among other items, MLS is to pay as additional rent, all real estate taxes, property insurance and certain repairs and maintenance expenses with respect to the Property.

11. In order to secure payments due under the Lease Agreement in the event of a default by MLS, Tempus and MLS also entered into an Escrow Agreement whereby the sum of $975,000.00 was placed in escrow with Relyance Bank as escrow agent. A true and accurate copy of the Escrow Agreement is attached hereto as Exhibit "C" and incorporated herein by reference.

12. To further secure payments due under the Lease Agreement, And-Lex granted Tempus a lien on real estate commonly known as 3525 Brady Lane, Lafayette, Indiana 47909, as evidenced by a Real Estate Mortgage attached hereto as Exhibit "D" and incorporated herein by reference. And-Lex Properties has not filed for relief under the Bankruptcy Code.

**B.     Lease Agreement Defaults**

13.     Despite only three (3) full monthly payments and one (1) partial monthly payment of rent being due under the Lease Agreement from the effective date of the Lease Agreement until the Petition Date, MLS only made one (1) full monthly payment and two (2) partial payments of rent prior to the Petition Date.

14.     AS of the Petition Date, the balance of rent due under the Lease Agreement was Two Hundred Thirty-Seven Thousand Three Hundred Forty Dollars and Sixty-two Cents ($237,340.62).

15.     Further, MLS has failed to pay the first post-Petition Date monthly payment rent payment which was due July 1, 2024.

**C.     Relevant Bankruptcy Proceedings and Orders**

16.     On June 25, 2024 (the "**Petition Date**"), Maximus Supply Chain Holdings, LLC and its affiliated entities, including Maximus Logistics Solutions, LLC (collectively, the "**Debtors**") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

17.     The Debtors continue in possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

18.     On June 26, 2024, Debtors filed their Motion to Use Cash Collateral for Operating Expenses and Granting Replacement Liens to Secured Creditors. (the "**Cash Collateral Motion**") [Doc. 5].

19.     On June 28, 2024, the Court entered an interim order approving the Debtors' request for authority to use cash collateral (the "**Interim Cash Collateral Order**"). [Doc 33].

4

20. On July 22, 2024, the Court entered a second interim order approving the Debtors' request for authority to use cash collateral (the "**Second Interim Cash Collateral Order**"). [Doc 95].

21. A final hearing on the Cash Collateral Motion is scheduled for August 15, 2024.

22. Upon information and belief, Centier Bank is unwilling to provide debtor in possession financing and thus far the Debtors have been unsuccessful in obtaining debtor in possession financing.

**D.   Lease Agreement**

23. Tempus requests that the relief requested herein is necessary to enable Tempus to protect its interests, including its interests in the Property that is being used by the Debtors in connection with Debtors' continued operation.

**RELIEF REQUESTED**

24. Through this Motion, Tempus requests this Court to compel the Debtors to immediately determine its treatment of the Lease Agreement, and, to the extent the Lease Agreement is assumed, to cure the pre-petition defaults and provide Tempus with adequate assurance of the future performance thereunder and necessary security for the Debtors' continued use of the Property. If and to the extent that Debtors reject the Lease Agreement, Tempus requests that it be afforded relief from the automatic stay necessary to enable Tempus to mitigate damages to its interests. Tempus requests that the Debtors be compelled to pay the amounts due post-petition to Tempus in connection with the Lease Agreement pursuant to Section 503(b)(1) of the Bankruptcy Code, as well as all amounts due pre-petition qualifying as administrative claims under Section 503(b)(9) of the Bankruptcy Code (collectively, the "**Administrative Claims**").

25. Tempus also requests a waiver of the 14-day stay of the effectiveness of any order granting relief from the automatic stay pursuant to Bankruptcy Rule 4001(a)(3).

**BASIS FOR RELIEF**

26. Bankruptcy Code § 365(d)(2) permits a counter-party to an executory contract or unexpired lease to seek entry of an order compelling the debtor-in-possession to assume or reject such a contract or lease by a time earlier than confirmation of a chapter 11 plan. See 11 U.S.C § 365(d)(2).

27. Section 362(d) of the Bankruptcy Code provides that, after notice and a hearing, the court "shall grant relief from [the automatic stay], such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

    **A.**    **The Lease Agreement is an "Unexpired Lease" under 11 U.S.C. § 365**

28. Section 365 of the Bankruptcy Code authorizes a bankruptcy trustee or a debtor-in-possession to assume or reject an unexpired lease. There can be no dispute that the Lease Agreement, which has an initial term of March 14, 2024, through March 14, 2044, and had not been terminated by either party, is an "unexpired lease" under relevant law.[2]

29. It is well established that an unexpired lease or executory contract must be assumed or rejected in its entirety. *Stewart Title Guaranty Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). A debtor in possession takes the debtor's contracts *cum onere*, that is, subject to the existing burdens and cannot accept the benefit of an executory contract without accepting the burdens as well. *Matter of Chicago, Rock Island, and Pacific R. Co.*, 860 F.2d 267,

---

[2] Neither § 365 nor the rest of the federal bankruptcy code defines "unexpired," but it is well established that courts look to state law to determine what constitutes an "unexpired" lease. *Robinson v. Chicago Hous. Auth.*, 54 F.3d 316, 318 (7th Cir. 1995).

6

272 (7th Cir. 1988).

30. When accepting or rejecting an executory contract under § 365 of the Bankruptcy Code, integrated contracts must be taken together as one uniform agreement. *See, In re Braniff,* 118 B.R. 819, 844 (Bankr.M.D.Fla. 1989) ("[m]ultiple contract documents may form one uniform agreement."); *see also, In re Karfakis*, 162 B.R. 719, 725 (Bankr.E.D.Pa. 1993) ("The Court is persuaded by this body of law which suggests that two contracts which are essentially inseparable can be, and should be, viewed as single, indivisible agreements between the parties."). An executory contract must be assumed or rejected in total and will not be bifurcated into parts that will be rejected and those that will not. *In re Exide Technologies*, 340 B.R. 222, 228 (Bankr.D.Del. 2006). Consequently, all of the contracts that comprise an integrated agreement must be either assumed or rejected since they all make up one contract. *Id.*

    **B.**     **Assumption of the Lease Agreement Should Be Compelled**

31. Section 365(d)(2) of the Bankruptcy Code permits a debtor to assume or reject an unexpired lease or executory contract at any time before confirmation of a plan of reorganization. However, the Court, on request of a party to a contract, may order the debtor to decide earlier. 11 U.S.C. § 365(d)(2). In deciding whether to accelerate the debtor's decision, the court must balance the interests of the contracting party against the interests of the debtor and its estate. *In re Physician Health Corp.,* 262 B.R. 290, 292 (Bankr. D. Del. 2001).

32. A balancing of these interests falls in favor of granting Tempus' relief and shortening the time in which the Debtors may assume or reject the Lease Agreement. In particular, the harm that will befall Tempus under the current circumstances regarding the Debtors continuous possession of the Property without adequate assurance of payment of rent vastly outweighs any good to be derived by the Debtors from an extended period of deliberation, because Debtors have

benefitted from the continued use of the Property to fund their operations since the Petition Date, leaving Tempus with nothing to show for the benefit it has provided to the estate.

33. The Debtors' inability thus far to obtain any DIP financing to fund operations on either a near-or-long-term basis calls into question the prospects of a successful reorganization or even sale of the assets of the Debtors.

34. Every day in which the Debtors are allowed to deliberate over its operations and formulation of a plan causes damage to Tempus.

35. Based upon the foregoing, sufficient cause exists to shorten the time within which the Debtors must assume or reject the Lease Agreement. Tempus specifically asks that the Court compel assumption or rejection by the Debtors by the hearing date on this Motion (the "**Assumption/Rejection Deadline**"). Tempus further requests that the Court order that, should the Debtors not decide by the Assumption/Rejection Deadline, the Agreement be deemed rejected as of the same date.

    **C.**    **Adequate Assurance of Cure and Future Performance Must be Proved**

36. As previously stated, the circumstances of this case call into question whether the Debtors will have sufficient funding to cure existing defaults under the Lease Agreement or perform on accruing liabilities with respect to the same.

37. Tempus requests that, as a matter of adequate assurance of the future performance in the case of assumption, the Court order that in the event the full amount due under Lease Agreement is not timely paid in accordance therewith, following notice of default to be filed by Tempus providing the Debtors the opportunity to cure within ten (10) calendar days, absent such cure the Debtors shall be deemed to have rejected the Agreements, and Tempus shall be granted relief from the automatic stay without further order of this Court as detailed below.

### D. Relief from the Automatic Stay Should be Granted

38. While the term "cause" under Section 362(d) is not defined by the Bankruptcy Code, courts have ruled that "cause" generally exists "when the harm that would result from the continuation of the stay would outweigh any harm that might be suffered by the debtor's estate if the stay is lifted." *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997) (internal citations omitted).

### E. Administrative Expense Claims Should be Allowed and Payment Compelled

39. Section 503 of the Bankruptcy Code provides that a party may seek allowance and payment upon notice and hearing before the Court of all "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(a)-(b)(1)(A).

40. The Debtors are obligated to pay Tempus the Administrative Claims arising out of the Debtors continued possession of the Property under the Lease Agreement.

41. In the event the Lease Agreement is assumed by the Debtors, the Debtors remain liable to Tempus under the Lease Agreement for the payment of all pre-petition and post-petition rents due under the Lease Agreement, which should properly be classified as administrative expense claims under 11 U.S.C. § 503(b)(1). *See, e.g., Bronco Hazelton*, 2008 Bankr. LEXIS 5146, at *28.

### **WAIVER OF BANKRUPTCY RULE 4001(a)(3)**

42. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

43. In the event the Debtors reject the Lease Agreement pursuant to the terms of this Motion, there is no reason to delay the effect of an Order granting relief from stay requested herein.

Accordingly, Tempus respectfully requests that this Court grant such relief effective immediately upon an event of rejection.

## RESERVATION OF RIGHTS

44. Tempus expressly reserves all of its rights with respect to this Motion or otherwise, including the right to amend or supplement this Motion at any time prior to hearing thereon. Tempus further reserves its rights and claims under the Lease Agreement.

## NOTICE

45. Tempus will serve notice of this Motion upon the following parties via e-mail: (i) the Office of the United States Trustee for the Northern District of Indiana; (ii) counsel to the Debtors; (iii) those parties entitled to receive notice pursuant to Bankruptcy Rule 2002. Tempus submits that no other or further notice is necessary or required.

## NO PRIOR REQUEST

46. No prior request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, Tempus respectfully requests that the Court enter an order, (1) compelling the Debtors to immediately determine whether to assume or reject the Lease Agreement, pursuant to 11 U.S.C. § 365(d)(2) by the Assumption/Rejection Deadline; (2) to the extent the Debtors seek to assume the Lease Agreement, compelling the Debtors to provide adequate assurance as required by Section 365(b)(1) and in the form acceptable to Tempus; 3) should the Debtors default on and fail to cure on payment obligations arising under the Lease Agreement, granting Tempus relief from the automatic stay to (a) enter the premises and secure the property subject to the Lease Agreement, and (b) cease performance of all obligations of Tempus and related parties to the Debtors under the Lease Agreement, including but not limited

to ceasing further access to the Brady Lane premises and prohibiting any activity related thereto; (4) allowing Tempus Administrative Claims and compelling payment of the same in full by the Debtors by the date that is seven (7) days following the Assumption/Rejection Deadline, and (5) for such additional relief as the Court deems just and proper.

Dated July 29, 2024

                              Respectfully submitted,

                              **KAHN, DEES, DONOVAN & KAHN, LLP**

                              By: /s/ Michael E. DiRienzo
                                   Michael E. DiRienzo, #22946-71
                                   E-Mail: mdirienzo@kddk.com
                                   KAHN, DEES, DONOVAN & KAHN, LLP
                                   501 Main Street, Suite 305
                                   P.O. Box 3646
                                   Evansville, IN  47735-3646
                                   Telephone: (812) 423-3183
                                   Facsimile:  (812) 423-3841

## CERTIFICATE OF SERVICE

On July 29, 2024, a copy of the foregoing pleading was filed via the Court's CM/ECF system which caused notification and service of same upon each of the parties entitled to notice thereof and the parties registered to receive ECF notifications in this case.

/s/ Michael E. DiRienzo
Michael E. DiRienzo, #22946-71
E-Mail: mdirienzo@kddk.com
KAHN, DEES, DONOVAN & KAHN, LLP
501 Main Street, Suite 305
P.O. Box 3646
Evansville, IN 47735-3646
Telephone: (812) 423-3183
Facsimile: (812) 423-3841

KDDK653930_2